UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OMAR EDWARDS, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 13 C 1811 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| VILLAGE OF SCHAUMBURG, an Illinois municipal corporation, J.B. AT SCHAUMBURG, INC., d/b/a JOHN BARLEYCORN, an Illinois business corporation, OFFICER ROSS URSO, OFFICER ANTES, OFFICER CAIRNS, and OFFICER CHANDLER, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| RODOLFO GONZALEZ, JOSEPH NUGARA, and JAKE GOLOJUCH, | ) ) ) | |
| Defendants/Counter-Plaintiffs. | ) | |

## MEMORANDUM OPINION AND ORDER

Omar Edwards brought this suit against the Village of Schaumburg and Schaumburg Police Officers Antes, Cairns, Chandler, and Urso (collectively, "Schaumburg Defendants"), and J.B. at Schaumburg, Inc., d/b/a John Barleycorn, Jake Golojuch, Rodolfo Gonzalez, and Joseph Nugara (collectively, "Barleycorn Defendants"). Doc. 32. The suit arises from an altercation at the John Barleycorn restaurant and bar in Schaumburg, Illinois, during the early morning hours of February 6, 2011. The amended complaint sets out four counts under 42 U.S.C. § 1983 and Illinois law: (1) a state law battery claim against the Barleycorn Defendants; (2) a Fourth Amendment excessive force claim against the Schaumburg Defendants; (3) a state law spoliation of evidence claim against the Barleycorn Defendants; and (4) a state law malicious prosecution clam against the Barleycorn Defendants. Golojuch, Gonzalez, and Nugara, who are John

1

Barleycorn employees, counterclaimed against Edwards, alleging state law battery. Doc. 74. A one-week jury trial has been set for January 12, 2015. Doc. 84.

The Schaumburg Defendants have moved for summary judgment under Federal Rule of Civil Procedure 56 on the Fourth Amendment excessive force claim. Doc. 80. Edwards states that he does not contest summary judgment in favor of Officers Chandler and Urso, Doc. 89 at 2, so the motion is granted as to them. Edwards does not respond to Defendants' argument that the Village is entitled to summary judgment, Doc. 81 at 13-14, so the motion is granted as to the Village as well. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver."); *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [an argument] in his brief opposing summary judgment, [the plaintiff] lost the opportunity to urge it in both the district court and this court."), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013). For the following reasons, summary judgment is denied as to Officers Antes and Cairns.

**Background**

The following facts are stated as favorably to Edwards, the non-movant, as permitted by the record and Local Rule 56.1. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). In considering the summary judgment motion, the court must assume the truth of those facts but does not vouch for their actual truth. *See Smith v. Bray*, 681 F.3d. 888, 892 (7th Cir. 2012).

Edwards arrived at John Barleycorn late in the evening of February 5, 2011. Doc. 90 at ¶ 8. At approximately 2:23 a.m. the next morning, Edwards was seated in a booth on the second floor when he twice threw ice into the air. *Id*. at ¶¶ 9-10. A Barleycorn employee responded by approaching Edwards and asking him to leave. *Id*. at ¶ 11. A physical altercation ensued between Edwards and Barleycorn security staff, during which Edwards was slammed on a table,

punched in the ribs, dragged to the floor, sat on, and punched in the head. *Id*. at ¶ 12. A Barleycorn employee notified Officers Antes and Cairns of the ongoing physical altercation between staff and a patron and summoned them upstairs. *Id*. at ¶ 13. When Antes and Cairns arrived, they observed Barleycorn staff in the process of restraining Edwards on the floor. *Id*. at ¶ 14. After Antes handcuffed Edwards, Antes and Cairns handed him back over to Barleycorn staff, who smashed him face-first into a brick wall, breaking his tooth. *Id*. at ¶¶ 15-16, 18. Antes then escorted Edwards downstairs and out of the bar. *Id*. at ¶¶ 19, 21.

Outside John Barleycorn, Antes slammed the still-handcuffed Edwards to the ground, causing Edwards to sustain an abrasion on his knee. *Id*. at ¶¶ 21-22; Doc. 82-3 at 19 (pp. 172:3-173:3). When Officer Urso arrived, he saw Edwards restrained face-down on the ground. Doc. 90 at ¶ 24. Edwards requested medical attention and was taken in an ambulance to a hospital, where he received a tetanus shot for his scraped knee. *Id*. at ¶ 30-32.

## Discussion

Antes and Cairns seek summary judgment on Edwards's excessive force claim. The claim arises from two separate alleged uses of force: the first occurring inside Barleycorn, where he was shoved face-first into a brick wall after being handcuffed and handed over to Barleycorn staff; and the second occurring outside Barleycorn, where he was slammed to the ground.

### I.  Inside John Barleycorn

Defendants argue that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). Whether a defendant is entitled to qualified immunity depends on two questions: "(1) whether the facts,

taken in the light most favorable to the plaintiff, make out a violation of a constitutional right[,] and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Hernandez v. Sheahan*, 711 F.3d 816, 817 (7th Cir. 2013).

With respect to the events inside John Barleycorn, Antes and Cairns address only the first of these questions. Doc. 81 at 5-13. Their argument is that neither of them used any force against Edwards inside Barleycorn. *Id*. at 5-9. Defendants are wrong that they cannot have violated the Fourth Amendment simply because they did not personally slam Edwards into the brick wall after he was handcuffed and turned back over to Barleycorn staff.

Settled law holds that "a defendant must have been personally responsible for the deprivation of the right at the root of a § 1983 claim for that claim to succeed." *Backes v. Vill. of Peoria Heights*, 662 F.3d 866, 869 (7th Cir. 2011) (internal quotation marks omitted). However, "a defendant's direct participation in the deprivation is not required." *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). Rather, "[t]o be personally responsible, an official [who did not directly participate in the deprivation] must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (internal quotation marks omitted). Accordingly, "under certain circumstances[,] a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (citing cases); *see also Sanchez v. City of Chicago*, 700 F.3d 919, 925-29 (7th Cir. 2012).

Failure to intervene claims most often arise where an officer fails to intercede when a fellow officer is subjecting a plaintiff to excessive force. *See Sanchez*, 700 F.3d at 926 ("[A] defendant police officer may be held to account both for his own use of excessive force on the plaintiff, as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers.") (internal citation omitted); *Byrd v. Brishke*, 466 F.2d 6, 11

4

(7th Cir. 1972) ("[A] police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."). But nothing in the failure-to-intervene doctrine prohibits a claim where, as here, officers hand over a plaintiff to private individuals who proceed to inflict violence on him. Antes and Cairns do not dispute that point. The two arguments they do raise are without merit.

First, Antes and Cairns contend that Edwards forfeited his failure to intervene claim by not raising it until his brief opposing summary judgment. Doc. 91 at 9-10. Antes and Cairns cite no relevant legal authority to support their contention, thereby forfeiting it. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). In any event, while Edwards's amended complaint is far from pellucid, it can be read to encompass both a straight excessive force theory and a failure to intervene theory. Doc. 32 at ¶¶ 22-23. Moreover, because Edwards explicitly raised his failure to intervene theory well before trial, there is no forfeiture. *See Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 48-49 (1st Cir. 2005) (holding that the plaintiffs did not forfeit their failure to intervene claim where they explicitly raised the theory in their opposition to the defendants' summary judgment motion); *cf. Harper v. Albert*, 400 F.3d 1052, 1063 (7th Cir. 2005) (holding that the plaintiffs forfeited their failure to intervene claim where they did not explicitly raise it until after the pretrial order had issued).

Second, Antes and Cairns contend the failure to intervene doctrine "does not impose liability upon officers for failing to prevent (or predict) constitutional violations that may occur some time in the future." Doc. 91 at 10 (internal quotation marks omitted). Antes and Cairns are right about the law, but the facts here, viewed in the light most favorable to Edwards, reveal far more than a mere failure to predict that the Barleycorn staff would inflict excessive force on

Edwards.  Antes and Cairns knew that Edwards had been in a physical altercation with Barleycorn staff (that is why they were summoned), and they arrived to find Barleycorn staff restraining Edwards on the floor.  Yet after Antes handcuffed Edwards, he and Cairns delivered Edwards right back to Barleycorn staff.  Given these uncommon factual circumstances, a reasonable jury could find that Antes and Cairns knew that Barleycorn staff, having just been engaged in a physical altercation with Edwards and not being subject to the regulations and norms governing sworn officers, would take advantage of Edwards being restrained by physically abusing him; that is, a reasonable jury could find that Antes's and Cairn's conduct reflected far more than a simple failure to predict that Barleycorn staff would do what they did.

Defendants do not press the second qualified immunity question as to the events inside John Barleycorn, thereby forfeiting any argument they might have presented.  *See Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011) ("As the moving party, the [defendant] had the initial burden of identifying the basis for seeking summary judgment."); *Titran v. Ackman*, 893 F.2d 145, 148 (7th Cir. 1990) ("When a party moves for summary judgment on ground A, the opposing party need not address grounds B, C, and so on.").  In any event, based on the above-cited authorities, it was clearly established at the time of the underlying events that police officers had a duty to prevent others from subjecting arrestees to excessive force.

## II. Outside John Barleycorn

As for the events that occurred outside John Barleycorn, Antes and Cairns argue that slamming Edwards to the ground did not constitute Fourth Amendment excessive force as a matter of law.  The governing law is clear.  "The nature and extent of the force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the

6

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The court examines the facts as a reasonable officer on the scene would have viewed them, bearing in mind "that officers often need to make split-second judgments based on rapidly developing events." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009).

The court cannot conclude on the summary judgment record, with all factual disputes resolved in Edwards's favor, that the degree of force used on him outside John Barleycorn was reasonable as a matter of law. Edwards was already handcuffed when he was escorted outside; he was not resisting arrest or attempting to flee; he was not uncooperative at that point; and the underlying crime—getting into a fight with Barleycorn staff—was not terribly serious. Yet Edwards was still slammed to the ground and restrained face-down. At the time of these events, and in fact "[p]rior to 2007, it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 732 (7th Cir. 2013); *see also Morfin v. City of E. Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003) (reversing summary judgment on an excessive force claim where the evidence would allow a reasonable jury to find that the defendant officers grabbed the plaintiff arrestee and threw him to the floor even though he was "docile and cooperative" and "did not resist arrest in any way prior to the officers' use of excessive force"); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1043 (7th Cir. 2002) (reversing summary judgment on an excessive force claim where the evidence would allow a reasonable jury to find that the defendant officer shoved the plaintiff arrestee to the ground "without provocation or excuse"). That is precisely the situation here (again, assuming that Edwards's version of the facts is correct), so Edwards's excessive force

claim survives summary judgment and the qualified immunity defense to the extent he complains of the actions taken by Antes and Cairns outside of John Barleycorn.

Antes and Cairns also contend that Edwards has no viable Fourth Amendment claim because his injury was relatively minor. Doc. 81 at 12; Doc. 91 at 7-8. In so arguing, Defendants forget that Edwards's injury resulted in a trip to the hospital and a tetanus shot. In any event, a Fourth Amendment excessive force claim may proceed even if the plaintiff does not sustain a serious injury. *See Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) ("an excessive force claim does not require any particular degree of injury") (citing cases); *Herzog*, 309 F.3d at 1043 ("The Fourth Amendment protects against unreasonable seizures, not seizures that 'shock the conscience' or cause 'severe injuries.' … The objectively unreasonable seizure itself (regardless of the officer's motive or whether any injury inflicted was severe) crosses the constitutional threshold.") (alteration in original); *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 470 n.3 (7th Cir. 1997) ("[t]he district court correctly noted that an excessive force claim does not require an injury").

## Conclusion

For the foregoing reasons, the Schaumburg Defendants' summary judgment motion is granted as to the Village, Chandler, and Urso, and denied as to Antes and Cairns. Trial will proceed on Edwards's claims against Antes, Cairns, and the Barleycorn Defendants, and also on the individual Barleycorn Defendants' counterclaim against Edwards.

October 16, 2014

United States District Judge